May it please the Court, Jennifer Thornton. I represent the appellate, Irvin Jack Jr. I thought the best use of my time today would be to address some of the issues regarding improper joinder of the three individual defendants who found to be improperly joined and claims dismissed against them. I wanted to specifically address what I think distinguishes this case and the factual allegations and nature of the tortious conduct from other cases dealing with canter versus quarrying and applying those four canter criteria because I do think that there are some distinctions that make a huge difference when you look at this case compared to really the body of canter cases. Also I wanted to briefly address on improper joinder the declarations and evidence that were submitted to the trial court on the motion to remand and in particular how we believe that those declarations do not contain the type of discreet and undisputed facts that this court said can be properly considered in Smallwood. Finally I wanted to address quickly with prescription the issue of constructive knowledge and the small but I think emerging body of cases that deal with the question of constructive knowledge when there is no inquiry into the cause of a diagnosis or the cause of a disease but the inquiry would have been futile if it had been. And quickly before turning to my argument I did want to advise the court of one procedural development that occurred after all the briefing was completed and that is that the other 13 severed cases from the original Lamar Ellis versus the Bonnet case have all been stayed pending the outcome of this appeal for Mr. Jack and that's because the remand issue in particular is going to require the court to look at the original petition which was filed on behalf of 14 co-plaintiffs who are now all in 14 separate cases such that if this court were to reverse that would impact all of those severed matters. On the issue of improper joinder the petition that was originally filed on behalf of the 14 co-plaintiffs sued in addition to a Bonnet Corporation which is the current owner and operator of the facility in reserve and Shell which was the company that owned and operated it prior to Bonnet sued three individuals who were the overall site managers at the facility from different times from 2008 to April of 2021 which is when the suit was filed. The defendants who were sued, Randy Cascio, Artis Williams and Kerry Harrison were sued for personal negligence under Louisiana law and for individuals who were the highest-ranking employees boots on the ground at the facility on a daily basis with authority and control over all operations and safety issues. But don't you have to show that as to them they were delegated the duty not not to cause harm? Yes, and again since we're at the alleged facts that supported that these individuals were delegated a duty to protect the public from dangerous emissions from the plant and from operations from the plant. We believe that we did that in the petition and furthermore if to the extent that the petitions allegations are pierced and you get to the evidence we believe the evidence also supports that that was a delegated duty to these individuals. Was it according to the delegation or was it just implied by the nature of their positions within the company? So your we believe that there are both some direct allegations regarding their these individuals designations as responsible officials to the LDEQ, Louisiana Department of Environmental Quality, as well as the fact that they were the overall site managers. We believe those are specific direct allegations. We also believe there are reasonable inferences to be drawn here. And I think Judge Smith part of your questions are getting to the distinction that I wanted to draw between this case and really the body of cancer cases that we've all looked at. And that is that in most cases what you have in front of you are facts about a discreet event, a specific failure or defective piece of equipment that led to a one-time possible chemical release. And so the courts when applying cancer, if a individual employee has been sued for personal liability, looks to see do the allegations support that that person had some direct specific duty over whatever this discreet act or failure to act entailed. And I think what's different in our case is we're really trying to deal with a different type of tort all together, which is this years-long system of decision-making, policies that were put in place, decisions about what types of emissions controls to spend money on, what type of emission controls to install, systemic issues versus one discreet emission of ethylene oxide that expose the plaintiffs. So I think part of the issue here is the individuals, the corporation cannot act without individuals. So the individuals who at the facility had the type of authority and decision-making and policy-making control and authority were these site managers. And we think that's alleged specifically in the petition and we often also think that can is proven by the declarations as well as the permit applications that the plaintiff submitted to the district court. And your honor, I would point out that another issue with this delegation is when you look at the other cancer cases that where a site manager or a plant manager has been sued for personal liability, typically it's somewhat strange that the delegation of duty here has even been challenged because typically it's almost taken for granted. But what happens and what we see in the cases is that typically because you're dealing with something like a broken lamp, the site manager comes forward and says well I've delegated the duty to oversee broken lamps to Mr. or Mrs. X. And under Cantor that is, that shows that personal liability would not be appropriate as to that specific individual. There is nothing like that in this case. In fact, the plaintiff's very specifically alleged that these site managers retained, were delegated those duties, not independently solely each one of them was the only person in the company or at the facility responsible for the levels of admissions, but that each of them were delegated duties and responsibilities with respect to those And there's no evidence from any of the individuals or from Ebonic that those individuals further delegated any specific duties. And I think that's critical and that is one thing that distinguishes this case from most of the other cases. With respect to the responsible official designation because the parties have done a lot of back and forth on that, I know the I just I do want to emphasize that the reason that was alleged and why it's important is because each of these three individuals was certified to the LDEQ by Ebonic as someone who has decision-making and policymaking authority and control over ethylene oxide operations and emissions. That is in the definition of who can be a responsible official and it is in the permit applications that each of these individuals signed and certified that they were persons in those roles. Turning to the Smallwood issue, Smallwood was clear that the type of facts that can be considered outside of the pleadings are discrete undisputed facts that conclusively preclude liability. And the court gave various examples such as a medical malpractice case against the physician. It turns out the physician was not the person who performed the surgery complaint of. We have provided other examples such as an insurance adjuster who was sued for even the adjuster assigned to the claim. These are the types of facts that can properly be considered. By analogy, in this case, if any of these individuals had come forward and said I wasn't a plant manager at this facility, I never worked at this facility, or this facility doesn't emit ethylene oxide, or this facility didn't emit ethylene oxide when I was a plant manager. Those would be the type of discrete facts that could properly be considered. But what the declarations in this case put forward were very nuanced allegations about responsible officials duties to the LDEQ and some some statements about things they were specifically assigned or not assigned to do. What's missing from the declarations are those type of discrete facts that make a difference because they do have one discrete fact of them which is that they didn't know any of the plaintiffs. That would be the type of fact that would properly be considered if that was a necessary element for cancer liability, but it's not so it's irrelevant. Also missing from the declarations in this case, in particular if you look at the evidence in other cases, are rebuttals and direct denials of the allegations that these three specific individuals had knowledge of risk of harm, were in positions to take steps to control emissions and protect from the risk of harm, and the allegations that they just did not do so as for various policy reasons. Those allegations and those denials are not in these declarations. When you look at a lot of the other cancer cases, very specifically the individuals come forward to say I've delegated that down to someone else so I don't know anything about it or I just don't know anything about it. This was not my, this was not under my authority. These declarations don't contain those types of statements or facts. In fact, I would suggest and I took a close look at this court's case and PPG, Guillory v. PPG which involved the chemical release and a site manager and three safety managers were sued personally. In that case, this court said the petition undoubtedly meets the 12b6 analysis as the first step. However, once we look at the evidence, which were depositions, we find that these individuals delegated the duties to others with due diligence so cancer is satisfied or they knew nothing about the particular, I believe it was a furnace in that case, or it was a ruptured disk. For these individuals, that was not within their sphere of supervision. So, I looked at the petition in that case to see well what kind of allegations were made about these individuals and I would suggest to the court that the allegations were more generic than the allegations, which I know ours have been called generic. The allegations were very similar and if generic and this court found that met the 12b6 analysis as the first step. We think that the same can be said here and then once you get to the declarations, they don't change the outcome. Quickly on the issue of prescription. What happened here, Mr. Jack sued in 2021. His wife died in 2000 from breast cancer. We had a Judge Barbier found that because the amended complaint did not contain allegations that Mr. Jack, upon diagnosis and death of his wife, went out and conducted an investigation and asked the doctors what was the cause. That he was charged with constructive knowledge of everything that a reasonable investigation would have led to in 2000 and that based on that, prescription ran long before this case was filed. But Judge Barbier leapfrogged, I'll suggest, over an inquiry which was what was, what would that reasonable investigation have revealed and there are other cases, other severed cases from the Ellis matter where the courts did look at these exact same allegations about what information was available, what was easily accessible to plaintiffs, allegations regarding plaintiffs who were similarly situated as far as where they lived, education and knowledge that they had and those courts found that a reasonable investigation would not have led to a cause, knowing a causal link between Richardson. Good morning, Your Honors. Jeff Richardson and I'll be presenting the argument for both appellees in this case. My client, Monick, and Mr. Best represents Sheldon. It's undisputed that the canter factors are controlling jurisdiction in this case and we brief the four canter factors in our brief. I want to focus on factor two. It's one that Ms. Thornton just mentioned, the delegation of duty. Did the employer, my client, Devonick, delegate to these three employees the duty to protect the health of people who lived around the plant? These individuals, Mr. Williams was the site manager in the year 2016, Mr. Harrison was the site manager in 2008, and Mr. Cascio was the site manager in 2019 and 2020. Why they picked those three people to name and serve, I can't explain that. You'd have to ask them. But they picked the site managers for those discrete years and we know that being a site manager meant that you were also the RO, the responsible official, and that's mentioned in the petition. But what the petition doesn't say is what does that mean to be responsible official? I mean it has the word responsible in it, so you might simplistically look at the word and say hey they're responsible. But the statutes and the affidavits that we submitted explained what that actually means. It explained that they simply had to certify reports to the government, the federal EPA and the Louisiana Department of Environmental Quality, on certain data about the operations and about emissions and stuff like that. It was a reporting duty. But you can't simply say because they were RO that means that they were delegated a duty to community. And the affidavits specifically say that's not what it meant. They say that we were not delegated a duty to look at the emissions and determine if it was too much or not enough or anything like that. The affidavits specifically say that they were not delegated a duty to determine the safe level of emissions, which of course is the claim in this case that whatever that safe level was, the defendants went above it. It says they were not delegated a duty to consider the folks that lived around the plant and what would be safe for them, what might expose them to a risk of cancer, what might be enough for a warning. All of that is denied in the affidavits. Now in response, what Ms. Thornton just said is the same thing that was in their briefs. Well look at our petition. Well yes, let's look at the petition. What does it say in response to the affidavits? Paragraph 215 for example, the one that has to do with Mr. Williams, but it's it's a cut and paste. It's the same for the other ones. It says that he was specifically delegated duties. What duties? The petition doesn't say. The affidavit that they submitted explains what those duties were. I just described them, the duties to report to the government, but it was not a duty to protect the health of the folks around it. The next paragraph 216 says that they allowed the facility to omit DTO. I mean you can make that argument against anyone that worked for the plant. You could theoretically make that argument against anyone who stayed in Louisiana. They allowed it to be admissioned, but it wasn't their responsibility. They were never delegated that duty. Who would be responsible? The company for sure was responsible, and if the company as a whole was responsible, the affidavit says that at the very end. It says that some of these were responsibilities of the company as a whole. No one in the entire company is responsible for this. Well sure, there could be people that made decisions. For example, Ms. Thornton just said that one thing that distinguishes our case from the other cases that I'm going to get to in a second, is that in our case she said there was a years-long policies in place, and she said that make that makes this case different from Guillory, but that was addressed by Judge Vance in her decision below. She said yes, it's a distinguishing factor that makes it even less likely, less likely, that these individual employee defendants are proper defendants, because as Judge Vance described, if somebody like Mr. Williams was the site manager for one year, the chance that he was responsible for enacting a policy that was years long, I mean that would be pretty surprising if that was the case. You would think that these were probably in place a long time before, that were made by higher-up people in the past, or maybe people that were off-site. It was the plaintiff's duty to say, here's our evidence that this is the person that made, as she just said, that years-long policy decision, and there's nothing about that in the petition. And again, these types of allegations, where you sue a defendant that's out of state, and then you name the in-state people, a few of them, that work here, this court sees this all the time, and it's very, we know, we know how to deal with these cases. This court has been there before. We have on the one hand, a case like Ford, that they mentioned in their brief. That was a 1994 case, and Ford was the one that, just like here, the individual employees submitted an affidavit saying, oh, I was not delegated the duty. But then he was deposed, and in his deposition, he admitted, oh, actually, he did have that duty, and he could have shut down the plant, and then the plaintiffs presented evidence that they actually made a decision to shut down the plant because of the safety issue, and then the employee that they sued came in and reversed the decision. And when he was asked about it, his defense that's cited in this court's decision in Ford was, sometimes you have to overlook safety to get the job done. That is a person you can sue. That's the type of evidence that you would need. But then, in this case, this court's Hillary decision, it says just the opposite. This court distinguished Ford, and Judge Hickenbacker wrote the decision where it says that the plaintiffs in Ford came forward with affidavits contradicting the testimony of the non-diverse defendant. Here, nothing in the record directly contradicts the testimony of the defendant in this case. In fact, it should be. That's what Judge Vance wrote in her very well-reasoned decision. In the Anderson decision, which came afterwards, Anderson sort of set up a spectrum and said, on one side, you have a case like Ford, where the plaintiff has evidence, so that, you know, it's not just this affidavit with a bare-bones petition. And then, in Anderson, this court said, on the other extreme, you have a case like Guillory, and Anderson said, our facts are like a bare-bones petition, that is, the affidavit comes in and explains the full facts, that there was no delegation, that all the counterfactuals weren't met, and the plaintiffs have nothing in response to it. This case is like Anderson and Guillory and all these other cases in which there's a bare petition and something on the other side. This was an easy case. And we submitted a 28-J letter just last week, because I just happened to notice that last week, this was a Louisiana State Court decision, so this wasn't a removal issue, but they sued executive officers, and the reason that the Louisiana Fifth Circuit affirmed a summary judgment against those officers is exactly like this type of case. Somebody sued them, but there was no evidence that they met the counterfactuals. Now, the plaintiffs, you know, before they filed their petition, all they did was figure out that these people were responsible officials, but as the affidavits explain, that doesn't mean they were delegated their duty and met the counterfactuals. After removal, as this court said in Smallwood, the plaintiffs could have conducted targeted discovery. They could have tried to take the deposition like we had in the Ford case, but they didn't do that. There was no discovery at all. And then even after Judge Vance wrote a detailed decision going through every one of their arguments explaining why removal was proper here, they filed a motion for reconsideration. Now, I think it would have been a little late, but they could have put in that motion for reconsideration, now let us have some discovery. But they didn't ask for it there either. They just, they decided to follow the path of the plaintiffs and Guillory and Anderson, and we know what happens when that takes place. Now, Ms. Thornton didn't discuss it, except in a brief passing, but their brief says that even if we can't win on the negligence claim, we have that intentional battery claim. I just want to focus on that for a second, because, and I'm going to get to the factors of it, but there's a statement that Judge Vance makes that plaintiff's battery theory is implausible. And I just think we should think about that. What they're arguing for battery is that these three individuals, who had a one-year site manager job, Mr. Cascio had it for two years, they were so certain, so certain that exposure to ETO was going to cause harm to people, cancer and stuff like that. They were so certain about it that they intentionally, intentionally allowed those exposures and intentionally decided not to do anything about it. If that was actually true, then that means that these employees, who allegedly were intentionally making that decision for the neighbors, what impact would that have on the people that were working at the plant? I mean, that's ludicrous. It would be like a suicide plant, a suicide claim. You know, I'm knowing how dangerous this is, but I'm not going to do anything about it. It's preposterous on its face, but it also doesn't satisfy the law, because when you look at the allegations in the petition, just like I said before for the negligence allegations, there's just no there there. For intentional, you have to show either that they specifically intended the consequences, like, you know, battery where you punch somebody. We don't have that here. Or you have to have the type of intentional act where the person knows the result is substantially certain to come from misconduct. And Louisiana law, as this court has noted, substantially certain means it's been interpreted to be the equivalent to inevitable, virtually sure, and capable of failing. That's the best case that we cite. But you can't just say substantially certain to follow. You have to put some meat in the bones and explain why. Because as the Supreme Court said in Iqbal, naked assertions devoid of further factual enhancements are not enough. And as the court also said in Iqbal, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. That's the Supreme Court. And that's exactly what we have here, as Judge Vance explained. The petition, for example, in paragraph 222 says that Mr. Williams knew to a substantial certainty that annihilation of ETO would cause serious health risks. So I mean that that's that's the the element that you have to notice the chance of certainty. So let's find out why. And then the paragraphs just go on to the next allegation. There's nothing there. It is literally a threadbare recital of the elements. And the second element of the intentional tort would be that it actually came from his conduct. And again, all the petition says, paragraph 220, for example, says that Mr. Williams was personally responsible for the omissions. And then you want to go on to more and say, okay, so what do you have to say about that? Nothing. It doesn't explain why he's personally responsible. And in fact, that's an example of one where the affidavit contradicts it. He explains, I wasn't personally responsible because that duty was never given to me. I was never given the opportunity to say, here's the level of omissions that would be safe, and I think it needs to be changed. That was not the duty that was placed on him. There was no reason to sue these people except to just try to escape jurisdiction. Judge Vance had other reasons, too. I mean, I just want to mention that she said that the law does not allow for battery-by-omissions and has good analysis there. But let me move on to prescription, which Ms. Thornton addressed at the end. I agree, I mean, we all agree that the issue of the discovery rule of contra non-volentum, but Ms. Thornton skipped over something, and I think it's the most important thing in all of the cases. And this is not just me saying this. This court said it in the Taxotere case, where this court cited the Louisiana Supreme Court's Renfro case. The discovery rule of contra non-volentum only applies in exceptional circumstances. This is not something that's supposed to apply in every case. You need to have very specific facts where, on these facts, what the plaintiff did was reasonable under the circumstances. We know that you can either have actual knowledge or constructive knowledge, and when you get either one of those, the doctrine doesn't apply. All that Mr. Jack says in his petition, as Judge Vance said, is that he doesn't have actual knowledge. He says that I didn't know until I got something in the mail telling me that I had a claim. But that's not the standard. Plaintiffs don't have to sue until when someone shows up with a silver platter and says, here is your lawsuit. I mean, at most, that may mean that he had closed his eyes, did not have actual knowledge until that mailing came, but it doesn't mean that he didn't have constructive knowledge, a call for inquiry. A plaintiff has a duty to investigate. Counsel, do you agree that this duty to investigate also includes a component what the plaintiff would have discovered had he or she investigated? Absolutely, I do. And this Court addressed that. The way that this Court said it in Taxotere is this Court said, let's look at the actual complaint, the information that it says was out there. And that's exactly the reason that Judge Vance and Judge Barbier subsequently, but this was Judge Vance's decision, followed the template of Taxotere and looked at the complaint. And the complaint specifically says that throughout the 1940s, the link between ETO and health was discussed. But the big one for Judge Vance, and I think it's a big one here too, is the complaint says that in 2018 that the EPA released a report to the public that says individuals who live in certain places, including where Jack lives, have some of the highest risks of cancer from ETO exposure in the country. Now, I'm not quoting the EPA there, I'm quoting their petition. So on the face of their petition, they knew that not just that ETO is dangerous, but specifically where Mr. Jack lives, his blocks were the most dangerous parts of the country for ETO exposure. That is precisely the sort of information that a reasonable inquiry could have triggered. But you agree, I'm sure, that the education and experience of the matters. Absolutely. Every case is different. It's going to, you're going to have to look at specific circumstances of, you know, is this somebody that could have figured something out? What did he know? I mean, we know he explains in his petition, you know, the level of knowledge he says, but he doesn't have to be a rocket scientist. Because would he have known of this particular EPA notice, for example? Well, could he have found it out? That's the question is not, did he know about it? Because that's actual knowledge. It's if he had conducted an inquiry, if he had looked at my community, what the risks, I mean, this is cancer out, you know, you know, the risk of all the plants that are up and down this area of Louisiana. If he had done some investigations at where I live, is there anything here? And yeah, I mean, an EPA report is about as, that's about as big a news as you can get in terms of risks of what's in your community. So of course, he would have found that out. So that's most of the cases that you rely on, if I read your brief correctly, are brought by people who worked at a plant, right? Most are brought by people who work in a plant. No, I don't think that that is true. I mean, taxidermy, for example, did involve plants and involve people that were taking a medication for, for chemotherapy that had the risk of care loss as a result to it. On the, even on the removal side, when we're talking about prescription now, you know, the Anderson case that we cited was people who lived in the neighbors. So no, but the point is that, but I will agree with you on Judge Smith, and this might be where you're going, is absolutely every case is different. You need to look at what the plaintiff did when he had a triggering event. This court said in Taxotere that when you have a cancer diagnosis, that's big news. That's something that should put you on alert. And the minimum this court said that you should do is ask the doctor to pause. So Mr. Jack says in his petition that his wife died of cancer and he was afraid, you know, he was upset about that. He was afraid the same thing might happen to him. So what does he do? And you notice my pause because it says nothing. You know, this is not a case where the plaintiff says, here's the 10 things I did. And you consider whether under the circumstances, those 10 things are reasonable. Would he have discovered anything had he conducted a reasonable inquiry? Would he have discovered anything before this 2018 announcement or report came out? I would admit, Judge Englehart, that that is a closer question. It is. Judge Vance relied substantially on the 2018 EPA report because, I mean, it's an EPA report and it's not just a general report. It says for where you live, your block, it has this risk. So that was such an important factor. But let me also phrase the question a little more specifically. Did you argue that other events would also have put him on notice between the 2000 date, I believe it was 2000, death up to 2018? We did, Judge Englehart. And the way that we made that argument is we cited the actual complaint itself. We took the taxitier approach. The earliest one was the plaintiffs in their petition. They said that in the 1940s, the initial link started to be discovered. And then there's like two or three pages of their petition where it goes through, here's the things. And at some point, it says, these are the things that the industry knew. And then at some point, it says, here's things that other scientists knew. And it sort of builds itself up to the 2014 report, which the EPA made public in 2018. So they say to me, like, is there any discovery? Fact-intensive. They strike me as being very much fact-intensive rather than a matter of law that a person finds out his wife has cancer and he's going to go and deduce that it's a product of some chemical exposure or whatever. That's extraordinary. And for judges to say that, why isn't that something that we're going to ultimately have to go to a jury's going to have to resolve? What's reasonable for somebody to do that? And as long as you've got to go discover the causes of your cancer. You know, there's a lot of people with cancer patients, including this one. And I sure didn't go out and cross the country and let you check all the chemical exposures. I was trying to get a handle on the procedural posture of the case. Sure. I mean, prescription is sometimes decided at trial, sometimes decided at summary judgment, and sometimes decided... Yeah, I think I get that. That happens in court. But my question is, in this case, why is this a case that is dispatched by a very able United States District Court judge? Because I think you should have known. Given what was the significant... I mean, we often talk about where the petition is threadbare in this case. The Supreme Court of Louisiana? Excuse me? What Supreme Court? No, no, I said, we as litigants, you know, in my brief, I often say that their petition was threadbare. But one area that it was not threadbare, one area that it had a lot of information, is all of the information that was available about the risks of VTO. And they put it in there because they wanted to say that, of course, my client knew. But that same information is what any reasonable inquiry would have found, which is exactly what Judge Vance described. And in the next case, where they don't have that in the complaint, in the complaint, in the petition, then there's a different result in that case, because every case is going to be different. But this petition has extensive allocations. And again, that 2018 EPA report... Do you have to know that a particular chemical agent caused this? Well, the EPA report says that the ETO level for these neighborhoods where Jack lives is the highest in the country and is dangerous. But you have to deduce from those levels the risk that I have. I mean, for prescription, all you need to know is that you have a claim. And I think at that level, I see my time is out, we believe, we say that that is enough, as Judge Vance thoroughly described, that was enough to put him on notice for further inquiry. And that's all you need for constructive knowledge. It's not that you're going to win your case, but just that it's enough for further inquiry. All right. Thank you, Mr. Richardson. Thank you, Your Honor. A bonnet can only act through its human agents and employees. It defies logic to think that the company delegated to no one at the facility who was physically present any responsibility to protect the neighbors surrounding and living near the facility from dangerous emissions of a known carcinogen mutagenic gas. We reasonably allege, based on facts that are being named as responsible officials, specifically for ETO emissions and being the site managers and the highest ranking individuals, that those were individuals who had, who shared and had a delegation of some of those duties to the neighbors. But they basically say that they didn't know, but your client should have known. Which I also think defies logic. That's why they cut through the smoke. No one in the corporation with sufficient knowledge or responsibility, but this plaintiff out here, whose wife got sick with cancer, was charged with the knowledge and knowing that this defendant did it. And Judge Higginbotham, I think that's something that was kind of amiss about that. And I think that highlights the other point you made that all of these are  Regarding prescription and what a reasonable inquiry would have shown had Mr. Jack conducted it, whatever an investigation would have looked like in 2000, it's very telling that of seven different judges in the district court, three found . . . My question is, who is to decide that? Who should decide that, Your Honor? Yeah. We believe that is an issue that should have gone to the jury. What a Clearly a factual question. And I was only going to make the point that I think the fact that the judges are all coming out differently on the issue shows how factually intensive it is. But that's factually intensive per plaintiff though, right? I think your opponent had said that, and one of the questions I think Judge Smith asked has to do with the sophistication of the plaintiff, the timing, what the plaintiff had available in terms of research, whatnot. Could it be that every one of those decisions, except for the one you're arguing here, was nonetheless correct? Well, Judge Inglehart, obviously we can see that each plaintiff is going to be perhaps differently situated. I would represent to the court that most of them were actually very similarly situated here. And really what the courts, at least the other district courts, have focused on on this inquiry is with respect to what information, if a layperson from the community with no scientific background, no expertise, if a layperson was to make an investigation, and we'll take 2000 because that's Mr. Jack's case, it's one of the earliest cases, what would have been uncovered? Irreconcilable to me, and with all due respect to Judge Barbier, because I clerked for him, and I admire and respect him, he came out two different ways on these exact same allegations. In this case, he found that because there was no allegation that Mr. Jack did not ask a doctor what caused my wife's cancer, then constructive knowledge was charged, and everything else led to a finding that he should have known in 2000 of a causal link. Let me ask, too, I was going to ask your opponent, but you can edify me. Was there any discovery conducted in connection with the Contra Non issue? No, there was not. This is based purely on the pleadings as counsel referenced. Purely on the pleadings. And just quickly, I know my time isn't messed up, Judge Barbier, in one of the other cases, which is LaBeouf versus Evonik, based on these same allegations about what information was available, what the EPA did or didn't do, what the lay persons in the community understood, what was common knowledge or not about the facility, about ETO, found, now, in that case, there was an allegation. I asked my doctor and was told it was not genetics. Okay. So in that case, Judge Barbier found that a reasonable inquiry would not have led her to discover the cause of her cancer. That was in 2010, so this is even 10 years before that. Um, my last 10 seconds, I would just suggest to the court that, um, on the, the Cantor issue, that a close read of these declarations highlights that they are, they do not contain the type of facts that would lead to a break. Thank you. All right. Thank you, Mrs. Martin. Your case and all of today's cases are under submission and